Harold E. Koreman, J.
This is an article 78 CPLR proceeding in which petitioner seeks an order directing respondents to cancel the M.D. inscription granted to recipients of an “ M.D. degree” from the California College of Medicine who, it is alleged, have not satisfied the licensing requirements of the Education Law of the State of New York for this inscription, and to compel respondents to remove any references to such M.D. inscriptions from the records of registration of New York-licensed physicians and surgeons. Petitioner seeks further to have the respondents delete and remove the M.D. inscription and issue new licenses and certificates indicating thereon only the earned inscription of D.O., and to enjoin respondents from *850 granting M.D. inscriptions to those recipients of an M.D. degree from the California College of Medicine in the future who have been licensed by respondents as physicians and surgeons solely on the basis of their D.O. degree.
Respondents have not answered, but move for an order of dismissal upon the grounds that the petition does not state facts sufficient to entitle the petitioner to any relief, that petitioner does not have status to bring this proceeding, and upon the further ground that the petition is barred by CPLR 217. The Medical Society of the State of New York was granted leave to appear amicus curiae and has filed a brief in support of the relief sought by petitioner.
The petition alleges that following the receipt by certain osteopathic physicians and surgeons of an “ M.D.” degree from the California College of Medicine, respondents entered their names in the register of medical doctors and added to their certificates the inscription M.D. after the inscription D.O. previously issued to them. The proceeding is based on the contention that in giving official recognition to the California “ M.D.” degree, and by inscribing it on the licenses or certificates of osteopaths, respondents exceeded their statutory authority and acted in a manner contrary to the declared public policy of this State.
While it is not disputed that a doctor of osteopathy takes the same medical licensing examination and, upon passing it, has the right to practice medicine and surgery without limitation, nevertheless, petitioner alleges that the M.D. degree was conferred on these osteopaths by the California College of Medicine without their ever having been in attendance at that college, or taken any courses leading to an M.D. degree. Consequently, it is contended, that by adding the M.D. so obtained to the D.O. on their certificates, the public is misled as to their professional training and background, and that the Legislature intended not only to maintain a distinction between osteopaths and medical doctors but also that the public should be made fully aware of the different training and qualifications.
Respondents take the position that they are without legal authority to refuse to add the initials M.D. following the initials D.O. to the licenses in question since there is no statute which would prevent any person from using any degree legally granted in another State unless the proposed use was fraudulent; that since the recipients already had an unlimited right to practice medicine and were entitled to use the title “ Doctor ” by reason of that license, there could be no fraud. Furthermore, respondents state that the Department of Education is required to admit *851 to examination and upon successful completion thereof to license applicants who have completed the substantial equivalent of the required preliminary education and curriculum.
Assuming the truth of the allegations of the petition, the court is called upon to determine whether they are sufficient as a matter of law to entitle petitioner to the relief sought.
Article 131 of the Education Law, insofar as is pertinent here, was amended in 1961 to permit a doctor of osteopathy who has had the general education required by the rules of the department preliminary to receiving the degree of doctor of osteopathy, to apply for a license to practice medicine and surgery (Education Law, § 6506, subd. 3). Section 6512 was also amended by adding a new subdivision 3 which reads as follows: “ Graduates of colleges of osteopathy registered by the New York state education department who pass the medical licensing examination of the state of New York shall be issued a license to practice medicine and surgery. A license so issued shall contain thereon, following the name of the licensee, the letters D.O. Licenses heretofore issued to osteopathic physicians with limitations under prior statutes shall remain in force with such limitations continuing. ’ ’ This amendment was enacted by the Legislature at the request of the Department of Education for the purpose of removing all restrictions or limitations previously contained in the statute relating to the right of a doctor of osteopathy to practice medicine and surgery, provided the osteopath passed the State medical licensing examination. (See N. Y. State Legis. Annual, 1961, pp. 212-213.) Significantly, the amendment still requires that ‘ a license so issued shall contain thereon, following the name of the licensee, the letters D.O.” It is also provided by statute that upon receipt of an official report that an applicant has successfully passed the examinations and is recommended for license, the department shall issue a license to him according to the qualifications of the applicant (Education Law, § 6509).
The petition alleges that the applicants here never attended or pursued any course of study at the California College of Medicine; that they never practiced their profession in California, and the only medical education they received was in an accredited school of osteopathy leading to a degree of doctor of osteopathy. There is no question here of the right of the California college to issue any degrees authorized by that State, but the question is whether New York State should give official recognition to a degree so obtained. A license to practice medicine, granted by the State of California or any other State based solely on a degree so obtained, would not be recognized in this *852 State. Neither would such a degree by itself qualify an applicant to be licensed in New York (Education Law, § 6511).
The public policy of this State as declared by the Legislature is to maintain a distinction between osteopaths and medical doctors who employ different concepts of the art of healing in their practice. This is made clear throughout article 131 of the Education Law. (Matter of Kurk v. Medical Soc. of County of Queens, 24 A D 2d 897.) As was said by the court in Kurh (p. 898): “ It is within the province of the State to approve as satisfactory a school of osteopathy to the end that, upon graduation therefrom, an applicant will receive in this State a ‘ D.O.’ degree or license (Education Law, § 6512, subd. 3). Such a school might not be deemed satisfactory as a college of medicine, leading on graduation to an M.D. license, or vice versa. The differing licenses serve to apprise the public of the differing training of the licensee”. (Italics mine.) The court, in considering the same California “ M.D.” degree received by a doctor of osteopathy allegedly granted in the instant proceeding, said: “ He has received, therefore, a ‘ D.O.’ license, which is all that he is entitled to. The issuance to him of an M.D. license may possibly be attributed to the fact that a mistahe ivas made in accrediting his representation that he had a medical degree from a purported California college of medicine. It is undisputed that he received the medical degree either by mail or in person without ever having attended the purported college ”. (Italics mine.)
As to the objection that petitioner has no status to bring this proceeding, it is alleged that it is a membership corporation duly organized under the laws of the State of New York, that its membership consists of a majority of holders of New York physicians’ and surgeons’ licenses bearing the inscription D.O. who have received their professional training in osteopathic medicine, and that as the representative of these physicians, it has a vital interest and concern in all matters affecting members of the osteopathic profession and the public. Since the truth of these allegations must be assumed, it would appear that petitioner has the right to bring this proceeding (see Matter of Kornbluth v. Rice, 250 App. Div. 654 [3d Dept.], affd. 275 N. Y. 597).
As to the defense that the proceeding is barred by the Statute of Limitations, CPLB 217 provides that an article 78 proceeding is to be commenced within four months after the determination to be reviewed becomes final and binding on the petitioner, or after the respondent’s refusal, upon demand of petitioner, to perform its duty. In the case of an alleged failure of the *853 body or officer to perform its duty, the period runs from the time of refusal after demand. (8 Weinstein-Korn-Miller, N. Y. Prac., par. 7804.02.) This proceeding was commenced within four months after refusal by respondents to comply with petitioner’s demand. Furthermore, the proceeding is directed not only to licenses already issued, but also to biennial renewal registrations as well as new licenses to be issued in the future. Respondent’s contention, therefore, that the proceeding is barred by the Statute of Limitations is without merit.
In my opinion, the petitioner has made a sufficient showing to maintain this proceeding to compel the respondents to perform their duties as the law requires. Accordingly, the objections in point of law are overruled and the motion to dismiss the petition is denied. Respondents may have 10 days from the service of a copy of the order hereon, with notice of entry, within which to serve and file their answers.